# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Gyro-Trac Corporation, ) | Civil Action No. 2:21-2137-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| King Kong Tools, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

The matter before the Court is Plaintiff Gyro-Trac Corporation's Rule 12 motion to strike and/or in the alternative 12(c) motion for judgment on the pleadings as to Defendant King Kong Tools, LLC's patent invalidity and unenforceability defense. (Dkt. No. 32). For the reasons stated below, the motion is denied.

### I. Background

In this case, Plaintiff alleges Defendant began making, selling, and distributing cutter-teeth that incorporate Plaintiff's patented designs without permission from or compensation to Plaintiff. (Dkt. No. 21 at ¶¶ 10-11). Plaintiff sent Defendant a cease-and-desist letter on August 2, 2017 informing Defendant it was infringing on Plaintiff's patents. (Dkt. No. 21-3). The parties resolved this issue and entered into a Settlement Agreement ("the Agreement") on January 30, 2019. (Dkt. No. 21-2). Under the Agreement, Defendant agreed to "resolve the matter" of Plaintiff's patent infringement claim to "avoid the expense, inconvenience and distraction of potential protracted litigation." (*Id*. at 1). Defendant acknowledged that Plaintiff's patents were valid and enforceable, and agreed that it would not challenge "ownership, validity, enforceability, or patentability of the patents." (*Id.* at 5).

1

Plaintiff initiated this lawsuit on July 15, 2021. (Dkt. No. 1). Plaintiff filed an Amended Complaint on November 8, 2021, bringing claims for patent infringement, breach of contract, and for preliminary injunction. (Dkt. No. 21). Plaintiff alleges Defendant continued to infringe on its patents after the parties entered an Agreement. (Dkt. No. 21). In its Answer, Defendant asserts "the unenforceability and invalidity of Plaintiff's patents for failing to comply with one or more of the requirements of patentability set forth in 35 U.S.C. §§ 101, *et seq*." (Dkt. No. 26 at ¶ 69).

On January 11, 2022, Plaintiff filed Rule 12 motion to strike and/or for partial judgment on the pleadings as to Defendant's patent unenforceability and invalidity defense. (DKt. No. 32). Defendant filed a response in opposition. (Dkt. No. 36). Plaintiff filed a reply. (Dkt. No.37). The motion is ripe for the Court's review.

## II.    Legal Standard

### a.  Motion to Strike

Rule 12(f) permits the Court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). " 'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *CTH 1 Caregiver v. Owens*, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012) (internal citations omitted). " 'Scandalous' includes allegations that cast a cruelly derogatory light on a party to other persons." *Id.* "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." *See id.* (referencing Wright & Miller 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2011)).

Although the decision of whether to grant a motion to strike under Rule 12(f) is within the sound discretion of the court, the Fourth Circuit views Rule 12(f) motions with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001); *see also Commodity Futures Trading Comm'n v. Dupont*, No. 8:16-cv-03258-TMC-JDA, 2017 WL 4465700, at *2 (D.S.C. Sept. 7, 2017), *adopted*, No. 8:16-cv-03258-TMC, 2017 WL 4418673 (D.S.C. Oct. 5, 2017). Thus, the Court should generally deny a Rule 12(f) motion "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *See Rosendall v. Voight*, No. 4:17-cv-0821-BHH-TER, 2017 WL 9674476, at *4 (D.S.C. Sept. 11, 2017) (referencing Wright & Miller 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2011)).

### b. Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions "dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." *Lewis v. Excel Mech.*, LLC, 2:13-CV-281-PMD, 2013 WL 4585873 at * 1 (D.S.C. Aug. 28, 2013) *quoting* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1368 (3d ed. 2010). A judgment on the pleadings is only warranted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* at * 2 (citations omitted).

Rule 12(c) motions limit the court's review to the pleadings and "any documents and exhibits attached to and incorporated into the pleadings." *Lewis*, 2013 WL 4585873 at * 1 (citation

3

omitted). *See also Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964). Like motions to dismiss, Rule 12(c) motions call for the pleadings to be construed in the light most favorable to the non-moving party. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). Accordingly, "[t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *Lewis*, 2013 WL 4585873, at * 2 (citation omitted).

### III.    Discussion

Plaintiff moves to strike and/or for partial judgment on the pleadings as to Defendant's patent unenforceability and invalidity defense. (Dkt. No. 32-1 at 2). Plaintiff argues that Defendant entered an Agreement with Plaintiff that contained a no-challenge clause with language that clearly and unambiguously barred Defendant's right to challenge the enforceability and validity of the patents. Plaintiff cites Federal Circuit law, *Baseload Energy*, *Inc. v. Roberts*, for the proposition that a settlement barring the right to challenge patent validity in future infringement actions is sufficient so long as the language is clear and unambiguous, even if invalidity claims had not been previously at issue and had not been actually litigated. (Dkt. No. 32-1 at 4-6) (quoting *Baseload Energy*, 619 F.3d 1357, 1361 (Fed. Cir. 2010)).

In response in opposition to Plaintiff's motion, Defendant argues the no-challenge clause in the Agreement is unenforceable as against public policy pursuant to *Lear, Inc. v. Adkins*, because the Agreement is not part of an agreement to settle patent litigation. 395 U.S. 653 (1969). Defendant argues the parties' Agreement was executed pre-litigation and before Defendant had any opportunity to bring a patent validity challenge or obtain discovery relating to the patents. (Dkt. No. 36 at 2).

Federal Circuit law governs the determination of whether an argument bars a party from challenging the validity of a patent. *Baseload*, 619 F.3d 1361.

4

In *Lear, Inc. v. Adkins*, the United States Supreme Court rejected the doctrine of "licensee estoppel" and held that the "important public policy interest in permitting full and free competition in the use of ideas" outweighed "the technical requirements of contract doctrine." 395 U.S. 653, 670 (1969). Under *Lear*, a licensee of a patent is not estopped from challenging the validity of the licensed patent by virtue of the license agreement. *Id*. at 671.

In *Lear*, the United States Supreme Court explained that the demands of contract doctrine were in tension with the policies underlying patent law. The Court stated that "[l]icensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification." *Id*. at 670. Thus, faced with this "basic conflict in policy," the Court reasoned that "the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation involving negotiation of a license after a patent has issued." *Id.* at 670-71.

"Subsequent to *Lear*, courts have found *Lear*'s reasoning to mean that 'no-challenge' clauses in license agreements are unenforceable." *Ocean Tomo, LLC v. PatentRatings, LLC*, 262 F. Supp.3d 553, 562 (N.D. Ill. 2017) (citing Alfred C. Server & Peter Singleton, Licensee Patent Validity Challenges Following Medimmune: Implications for Patent Licensing, 3 HASTINGS SCI. & TECH. L.J. 243, 403 (2011)). In the years following *Lear*, the Federal Circuit has found that no-challenge clauses barring challenges to patent invalidity are enforceable in certain settlements or consent degrees. *See e.g.*, *Rates Technology v. Speakeasy, Inc.*, 685 F.3d 163 (2nd Cir. 2012) (discussing the evolution of settling patent cases in the wake of *Lear*).

In *Flex-Foot*, *Inc. v. CRP, Inc.*, the Federal Circuit established that a no-challenge clause entered in connection with settling litigation would be enforceable under certain circumstances.

238 F.3d 1362 (Fed. Cir. 2001). In *Flex*-Foot, the Federal Circuit distinguished *Lear*, noting that the license agreement in *Lear* did not contain and was not accompanied by any promise by the licensee not to challenge the validity of the patent. *Id*. at 1368. The court stated:

> "[t]his distinguishing fact is meaningful because it implicates the important policy of enforcing settlement agreements and res judicata. Indeed, the important policy of enforcing settlement agreements and res judicata must themselves be weighed against the federal patent laws' prescription of full and free competition in the use of ideas that are in reality a part of the public domain."

*Id*. at 1368. Citing policies favoring settlement and judicial economy, the Federal Circuit in *Flex-Foot* held that a licensee was barred from further challenges to the patent's validity because:

> "[o]nce the accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any challenge in the subsequent proceedings."

*Id*. at 1370.

Following *Flex-Foot*, the Federal Circuit in *Baseload* provided additional guidance as to which *Flex-Foot* factors must be present such that a settlement agreement could be enforced to estop a subsequent invalidity claim. In *Baseload*, the Federal Circuit held that a no-challenge clause in a settlement agreement did not bar the licensee from attacking the validity of the underlying patent because the agreement lacked the "clear and unambiguous language necessary to effect a release of patent invalidity defenses." 619 F.3d at 1363. The Federal Circuit rejected an argument that the *Flex-Foot* factors were determinative, *i.e.*, that to be enforceable, a no-challenge clause contained in a settlement agreement must have resulted from actual litigation on the enforceability of the patent at issue. *Id*. at 1362-63. In dicta, the Federal Circuit suggested that in the context of settlement agreements, as with consent decrees, clear and unambiguous language barring the right to challenge patent validity in future infringement actions is sufficient, even if

6

invalidity claims had not been previously at issue and had not been actually litigated. *Id*. It explained that each case must be examined on its own facts in light of the agreement between the parties. *Id*.

Since *Baseload*, the Federal Circuit has not ruled definitively on the enforceability of no-challenge clauses in pre-litigation arrangements. Other federal courts of appeal and district courts have addressed this issue. Defendant relies heavily on the Second Circuit Court of Appeals' decision in *Rates Technology, Inc. v. Speakeasy, Inc.*, which held that a no-contest clause contained in a pre-litigation settlement agreement is unenforceable under *Lear* whether styled as a settlement agreement or simply as a license agreement. 685 F.3d 163, 171-172 (2nd Cir. 2012). The Second Circuit in *Rates* declined to follow *Baseload* dicta that suggested the existence of prior litigation and discovery between the parties is not required to render a no-challenge clause enforceable. *Id*. at 173. The Second Circuit reasoned that if no-challenge clauses in pre-litigation agreements were held to be valid and enforceable, *Lear*'s policy "favoring the full and free use of ideas in the public domain" could be circumvented through craftsmanship. It stated:

> "Creating a 'good faith' dispute about patent validity that can be 'settled' by a license including a covenant never to challenge the patent would rarely be an obstacle to parties seeking to avoid the strictures of *Lear*. . . . As a result, allowing such no-challenges whenever a license agreement is cast as a 'settlement' could 'close[] the doors of the courts to a large group of parties who ha[ve] sufficient interest in the patent to challenge its validity."

*Id*. at 171. See also *Massillon-Cleveland-Akron Sign Co. v. Golden State Advertising Co*., 444 F.2d 425 (9th Cir. 1971) (holding that a no-contest clause contained in a pre-litigation settlement agreement is unenforceable under *Lear*); *Natural Alternatives International, Inc. v. Allmax Nutrition, Inc.*, 258 F. Supp. 3d 1170, 1175-76 (S.D. Cal. 2017) (same); *Dodocase VR, Inc. v. MerchSource, LLC*, Case No. 17-cv-07088-JCS, 2020 WL 475494, * 6-7 (N.D.Cal. Jan. 29, 2020) (same); *Ocean Tomo, LLC v. PatentRatings, LLC*, 262 F. Supp.3d 553, 565 (D.N.D. 2017)

7

(holding as a matter of law that a no-challenge clause was unenforceable "as a provision in a pre-litigation agreement-regardless of whether it is properly considered a 'settlement' agreement.")

Plaintiff cites to district court cases where the courts enforced settlement agreements containing no-challenge clauses where the agreement resolved litigation that had just begun. *C.R. Bard, Inc. v. Atrium Med. Corp.*, No. CV-21-00284-PHX-DGC, 2021 WL 4774948, at * 4 (D. Ariz. Oct. 13, 2021) (prior litigation terminated before Defendant filed answer or parties conducted discovery); *TMI Prod., Inc. v. Rosen Elecs., L.P.*, Case No. ED CV 12-02263-RGK (SPx), 2013 WL 12114078, at * 5 (C.D. Cal. Nov. 17, 2013) (finding "[a]lthough *Baseload*'s comments on *Flex-Foot* appear to be dicta, the Court finds them persuasive," where prior litigation terminated before Defendant filed an answer and no discovery occurred between the parties).

In this case, the parties entered an Agreement where Defendant agreed not to challenge the future validity and enforceability of Plaintiff's patents. (Dkt. No. 21-2). Prior to entering the Agreement, the parties did not litigate patent infringement, nor did they engage in discovery on patent infringement. The Agreement did not operate to end any litigation between the parties. Although the Federal Circuit has not specifically addressed the enforceability of pre-litigation settlement agreements that bar future challenges to patent validity, *Flex-Foot* indicates that settlement agreements containing clauses that bar future challenges to patent validity may be enforceable when certain circumstances are present. *Baseload* suggests the *Flex-Foot* factors are not determinative and the courts should examine each case on its own facts in light of the agreement between the parties. *Baseload*, 619 F.3d at 1363. *Baseload*, however, did not explain the enforceability of an agreement presented under the facts of this case where there was no prior patent infringement litigation between the parties, there was no discovery between the parties, and there was no litigation between the parties at the time they entered the Agreement. As *Baseload*

is not directly instructive to the facts at hand, the Court finds the Second Circuit's reasoning in *Rates* to be persuasive and the no-challenge clause in the Agreement is unenforceable pursuant to *Lear*, *Inc. v. Adkins*, 395 U.S. 653, 670 (1969).

Upon a careful review of the relevant authorities and viewing the pleadings in a light most favorable to Defendant, the Court finds that Defendant's patent unenforceability and invalidity defense is not insufficient and states a plausible claim. The Court finds that Plaintiff is not prejudiced by Defendant's defense. Plaintiff's Rule 12 motion to strike and/or partial motion for judgment on the pleadings is denied.

## IV.     Conclusion

For the reasons stated above, Plaintiff Gyro-Trac Corporation's Rule 12 motion to strike and/or for partial judgment on the pleadings as to Defendant King Kong Tools, LLC's patent invalidity and unenforceability defense is **DENIED**. (Dkt. No. 32).

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

March 4, 2022
Charleston, South Carolina