**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| GYRO-TRAC CORPORATION, | ) | Civil Action No. 2:21-cv-2137-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KING KONG TOOLS, LLC, | ) | **ORDER AND OPINION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Plaintiff's motion to compel (Dkt. No. 63). Defendant responded in opposition (Dkt. No. 67), and Plaintiff replied (Dkt. No. 72). For the reasons below, the motion is granted.

I.    **Background**

This is a patent infringement case where Plaintiff alleges Defendant makes, sells, and distributes cutter-teeth that incorporate Plaintiff's patented designs without permission or compensation from Plaintiff. (Dkt. No. 21).

Plaintiff filed a motion to compel discovery related to four categories of information: (1) the identity of the manufacturer of the devices accused of patent infringement, (2) the identity of customers who purchased the accused devices, (3) the timing and circumstances surrounding Defendant's decision to dispose of the accused device, and (4) financial information concerning the sales of the accused devices. (Dkt. No. 63).

II.   **Standard**

Parties to a civil litigation may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense" so long as the information is "proportional to the needs to the case . . . ." Fed. R. Civ. P. 26(b)(1). The scope of discovery permitted by Rule 26 is designed

1

to provide a party with information reasonably necessary to afford a fair opportunity to develop his or her case. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992) (noting that "the discovery rules are given 'a broad and liberal treatment'"). The court "must limit the frequency or extent of discovery . . . if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus-Am. Discovery Grp. V. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995); *accord Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Courts have broad discretion in [their] resolution of discovery problems arising in cases before [them]."). To enforce the provisions of Rule 26, a party, under Rule 37, "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

## III.   Discussion

### A. Defendant is ordered to disclose the identity of the manufacturer of the accused devices.

Plaintiff moves to compel Defendant to disclose the identity of a third-party manufacturer of the accused products. (Dkt. No. 63 at 2). Plaintiff contends that the manufacturer is a witness central to the facts of the case that can testify, among other things, about manufacturing instructions the manufacturer received from Defendant and whether those instructions were related to potentially infringing features of the product. (*Id.*). Defendant responds that it has answered those questions in interrogatory responses and that the manufacturer's testimony is not needed and is not proportional to the needs to the case. (Dkt. No. 67 at 5-6). Defendant further argues that Plaintiff "wants to harass a third-party for information that [Defendant] has already provided." (*Id.* at 6).

2

The Court here finds that the manufacturer identity is relevant to Plaintiff's infringement claim since it would provide additional witnesses that can testify about the design and manufacture of the accused product. The Court also finds relevant testimony related to instructions the manufacturer received from Defendant regarding the manufacture of the accused device, including whether or not the Defendant tried to design around the asserted patents. Moreover, Defendant did not dispute that the information Plaintiff seeks from the manufacturer is relevant. (Dkt. No. 67 at 6). Defendant merely contends that it already provided that information in discovery responses. (*Id.*)

The Court is not persuaded by Defendant's concern that Plaintiff may potentially harass the third-party manufacturer. Additionally, the Court does not find this discovery unreasonably duplicative, even considering Defendant's contention that it has already provided the information Plaintiff seeks from the manufacturer. Given the relevance of this information and the minimal burden on the Defendant, the Court orders Defendant to produce the identity of the manufacturer of the accused products.

**B. Defendant is ordered to produce the identity of customers who have purchased the accused devices.**

Plaintiff moves to compel the production of customer information. Specifically, Plaintiff has limited its request to three items: (1) customers who purchased products since the case was filed; (2) customers who overlap with Plaintiff's customer prospects; and (3) confirmation of whether a specific individual is Defendant's customer and his contact information if he is Defendant's customer.

Plaintiff seeks discovery of customer information for two reasons, and Defendant argues that neither reason shows that the discovery is proportional to the needs of the case. First, Plaintiff seeks this information to determine damages and to answer questions Plaintiff believes is relevant

3

to infringement. (Dkt. No. 63 at 3). In response, Defendant contends that Plaintiff seeks this information in pursuit of a tenuous damages theory and that the damages theory does not justify production of customer identifying information when summary sales documentation has already been produced. (Dkt. No. 67 at 11). Second, Plaintiff seeks discovery of customers' identity to locate samples of the allegedly infringing products that the Defendant no longer has in its possession. (Dkt. No. 63 at 4). Defendant argues that pursuing a sample through one of its customers is not necessary because Defendant already provided 3D models, engineering drawings, and images of the accused product. (*Id.* at 9).

Customer lists can be used to determine the impact the alleged infringing activity has on a patent owner's market share, which is relevant to certain damages calculations. *See Tama Plastic Indus. V. Prichett Twine & Net Wrap, LLC*, No. 12-cv-0324, 2013 WL 275013, at *5 (D. Neb. Jan. 24, 2013); *Rotex Global v. Gerard Daniel Worldwide, Inc.*, No. 17-cv-2118, 2019 WL 5102165, at *7-8 (M.D. Pa. Oct. 11, 2019) (ordering that customer information be produced as a crucial component to showing the loss of sales suffered by the plaintiff). Customer lists can also be used to compute sales information like profits and costs. *See Ropak Corp. v. Plastican, Inc.*, No. 04-cv-5422, 2006 WL 1005406, at *3 (N.D. Ill. Apr. 17, 2006) (ordering the production of customer lists with names, dates, and addresses as documents that could reasonably lead to a computation of profits and costs). Additionally, if samples of the accused product are no longer available from the defendant, it may be necessary for the patent owner to contact the defendant's customers to locate samples of the allegedly infringing products. *Tama*, 2013 WL 275013, at *5 (citing *Peter Kiewit Sons', Inc. v. Wall Street Equity et al.*, No. 10-cv-0365, 2011 WL 5075720, at *6 (D. Neb. Oct. 25, 2011).

The Court here finds that the customer information sought by Plaintiff is relevant to damages calculation since it would provide a basis for determining whether and to what extent Defendant sold allegedly infringing products to former or current customers of Plaintiff. This information would be helpful in a reasonable royalty or loss profits analysis. The Court is not persuaded by Defendant's contention that a customer list is not needed because Plaintiff's damages theory is tenuous. Whether or not Plaintiff's damages theory is tenuous may very well be shown by this evidence.

The Court also finds that the information sought is relevant so that Plaintiff may locate a sample of the accused product. This Court recognizes the essential nature of accused product samples in patent infringement cases and believes a sample is reasonably necessary for Plaintiff to develop its case even when considering Defendant's production of 3D models, engineering drawings, and images of the accused products.

The Court does note, however, the harm which could flow from disclosure of this information and directs any production of this information to be designated attorney's eyes only pursuant to the Confidentiality Order (Dkt. No. 51). The Court orders the parties to meet and confer before Plaintiff contacts any of Defendant's customers, and if the parties cannot reach an agreement by meeting and conferring, the parties should ask the Court to intervene.

Accordingly, the Court orders the production of the following information: (1) customers who purchased products since the case was filed; (2) customers who overlap with Plaintiff's customer prospects; and (3) confirmation of whether a specific individual, Ross Sharpton, is Defendant's customer and his contact information if he is Defendant's customer.

**C.  Defendant is ordered to provide information regarding the timing and circumstances surrounding Defendant's decision to dispose of the accused devices.**

Plaintiff seeks information related to the timing of Defendant's decision to sell the accused products. (Dkt. No. 63 at 5-6). Specifically, Plaintiff wants to know how many accused products were in Defendant's possession at the time of the complaint and when the last of that inventory was sold. (*Id.*) Plaintiff claims this information is relevant to Defendant's post-Complaint activity regarding evidence in this case. (*Id.*) Defendant argues that it has sufficiently responded to Plaintiff's interrogatories requesting this information by providing summary financial information and by stating that it ceased making and selling the accused product. (Dkt. No. 67 at 9). Defendant also asserts that the reason it does not have a sample of the accused product is because Plaintiff's discovery request was not propounded after Defendant had already sold nearly all of its inventory. (*Id.* at 8). Defendant clarifies that only one sale was made after Plaintiff propounded the discovery request. (*Id.*).

The Court finds this information relevant because the Defendant had a duty to preserve evidence during the litigation. *See Nucor Corp. V. Bell*, 251 F.R.D. 191, 195 (D.S.C. 2008) ("[A] party has a duty to preserve evidence during litigation . . . ."). The circumstances and timing surrounding Defendant's disposal of the accused devices is relevant in determining whether Defendant breached that duty. The Court, therefore, orders Defendant to provide the number of accused products it had in its possession at the time the Complaint was filed. Additionally, the Court orders the Defendant to provide, up until the date of the last sale, dates on which Defendant disposed of any portion of that inventory and the amount disposed of on any particular date.

**D.  Defendant is ordered to produce invoice-level financial information concerning the sales of the accused devices.**

Plaintiff seeks production of documents and response to interrogatories establishing the revenues Defendant obtained from sales of the accused product. With respect to document discovery, Plaintiff seeks invoice-level detail "sufficient to confirm the number of units sold by or for you, the purchasers, the prices, and the dates of sale of any accused product." (Dkt. No. 63-1 at 49). Defendant has objected to collecting those invoices as unduly burdensome and not proportional to the needs of the case and argues that the production of invoices is not necessary because Defendant has provided the number of units sold each year and the total revenue from those sales. (Dkt. No. 67 at 12; Dkt. No. 71-1).

In deciding whether to compel production of invoice-level data in patent cases, Courts have considered whether the veracity of the summary sales data is in question. *Aquastar Pool Prods., Inc. v. Color Match Pool Fittings, Inc.*, No. 18-cv-094, 2019 WL 856860, *2 (C.D. Cal. Jan. 23 2019) (denying motion to compel printed invoices because "there is no reason the printed invoices would be more accurate than the spreadsheet"); *Teles AG Informationstechnologien v. Quintum Techs., LLC.*, Nos. 06-cv-197, 09-cv-072, 09-cv-232, 2009 WL 3648458, at *3 n.6 (D. Del. October 30, 2009) (denying motion to compel invoice-level data partly because there was no basis "to doubt the veracity of the aggregate sales data Defendants will provide").

The Court finds the invoice-level documents relevant to determine the veracity of the summary data provided by Defendant. Unlike in *Aquastar* and *Teles*, there may be some doubt as to the accuracy of the information Defendant provided. Indeed, Plaintiff argues that it needs invoice-level information to confirm the accuracy of Defendant's sales summaries. Accordingly, the Court orders Defendant to produce invoice-level documents sufficient to confirm the data in the summary sales tables.

7

**E. Defendant is ordered to produce gross profit information.**

Defendant does not dispute that gross profit information should be produced in response to Plaintiff's requests for production and interrogatories. (Dkt. No. 67 at 11). Defendant contends that it is in the providing that information. (*Id.*) Plaintiff complains about Defendant's delay in producing this information and requests the Court to impose a deadline for production. (Dkt. No. 72 at 8). Because discovery shall be complete no later than October 10, 2022 (Dkt. No. 62), the Court orders Defendant to serve updated discovery regarding gross profit information within 30 days of this order.

## IV.    Conclusion

For the reasons above, the Plaintiff's Motion to Compel (Dkt. No. 63) is **GRANTED**. Defendant is **ORDERED** to produce the following within 30 days of this order:

1. The identity of the manufacturer of the accused device;

2. A list of customers who purchased the accused products since the case was filed;

3. A list of customers who overlap with Plaintiff's customer prospects;

4. Confirmation on whether Ross Sharpton is Defendant's customer and if so, his contact information;

5. The number of accused products Defendant had in its possession at the time the Complaint was filed;

6. Dates on which Defendant disposed of any portion of its final inventory and the amount disposed of on any particular date, up until the date of the last sale;

7. Invoice-level financial information concerning the sales of the accused product; and

8. Updated discovery regarding gross profit information.

_s/ Richard Mark Gergel_
Richard Mark Gergel
United States District Judge

August 1, 2022
Charleston, South Carolina